Good morning. May it please the court, I'm James Laughlin and I represent the appellant Joseph Smith. With the court's permission I'd like to reserve two minutes of my time for rebuttal and I'll keep a track of my own time. Thank you. Before his trial, Mr. Smith, who was incarcerated and representing himself, asked for the court's assistance in getting civilian clothes so he wouldn't have to appear before his jury wearing a blue L.A. County jail jumpsuit. When he asked for the court's assistance, the court responded, it's not my job, no. The California Court of Appeals nevertheless upheld the decision and I would like to explain here today why that decision was an unreasonable determination of the facts and an unreasonable application of clearly established law. Well, supposing that there was an error. The California Supreme Court found that the error was harmless. And so it seems to me the question is why is its harmless error analysis contrary to clearly established federal law? Well, Your Honor, as I pointed out in the opening brief, this court recently in the Musladin opinion. Which was overruled by the United States Supreme Court. Correct, Your Honor. I realize that this is a much harder argument to make now that that case is no longer precedential. Although, as I pointed out in my reply brief, it still can be looked to the court as persuasive authority. Yeah, but it may well be persuasive, but it seems to me that the Supreme Court in DEC took care of the Musladin, the persuasive value of what's left of Musladin. I have to acknowledge that Musladin is very difficult to reconcile with the DEC case. And for clearly established federal law purposes, the only thing that matters is as declared by the United States Supreme Court. That's correct. And actually, more specifically, the only things held by the United States Supreme Court DICTA does not count. And I would submit the language that we're referring to in DEC is actually DICTA. That is not part of the court's holding. So I think under general AEDPA precedent about what and what you don't look at in Supreme Court decisions, I think DEC maybe kind of creates a question in our mind. But it's not the Supreme Court saying things are inherently prejudicial. Well, even if that's right, I'm not going to get in a debate about DICTA with you. But even if that's right, what clearly established Supreme Court precedent says about the California Court of Appeal, how the California Court of Appeal conducted its harmless error analysis is wrong. Well, I would point to the same cases that were pointed to in Musladin, which was starting with Estelle v. Williams. The court said that they're... That embraces. I mean, it doesn't. It allows for harmless error analysis. Your Honor, if you look at the opinion closely, what it's doing is it's talking about how lower courts have dealt with the problem. And then it goes on to its own analysis. And because in that case it determined that the defendant never made an objection that would even bring the issue, you know, into proper consideration, they didn't have to get to any kind of error analysis. Okay. So it didn't say you couldn't do it. Right. So I don't think... So how can it be wrong for the California Supreme Court to say you can? Well, I think that it's inconsistent with the language in Estelle that says that there are certain types of things that cause inherent prejudice, where the prejudice can't be seen from the trial transcript, where there's a risk of impermissible factors coming into play. All of that language reflects an analysis that doesn't really logically permit the next step about, okay, let's talk about how all this inherent prejudice... Well, what that language actually does is say that the burden is not on the defendant to show prejudice. It doesn't say that the government cannot show the lack of prejudice on a harmless error analysis. Two very different things. Well, and frankly, to use your issue about the dicta, if you look at Williams v. Taylor, it's clear that dicta, even of the Supreme Court, does not count for AEDPA purposes. And as Judge Reimer just mentioned, where is their Supreme Court precedent that says that what the California Supreme Court did is wrong? Why can't a harmless error analysis apply here? I think the most recent case I could point to is U.S. v. Riggins, which dealt with forcible medication during trial. And again, this may fall within the dicta category, but it reflects, I think, backwards as to what the prior holdings held. It said forced medication, like going to jail and going to trial in prison clothes, is one of those things that's inherently prejudicial. Yeah, which, as I said, means that the defendant does not have to show that he was prejudiced. Right. But it does not mean that the government cannot show that it was harmless. Yes. I understand the Court's argument, in fact, and I understand that this, as I said, this argument is much, much more difficult to make after the Muslim opinion got vacated. And therefore, if the Court has other questions on this area, I'd like to answer them. But otherwise, I'd like to just talk about harmless error. I'd like you to outline the theory that Mr. Smith was compelled to go to trial without wearing the jail clothing, given the fact that the judge offered to give him a continuance to get him clothing, and the California Supreme Court's alternative ruling that even if he did make the objection timely, he had weighed it by saying, no, no, I'm just not going to go do it. Yes, Your Honor. That, as I said, there's two ways to look at that, an unreasonable determination of the facts and an unreasonable application of Federal law. With regard to the facts, the first thing the Court has to do is recognize Supreme Court authority that just says what a waiver is. A waiver is a knowing abandonment of a known right, an intentional abandonment of a known right, and the courts indulge in every reasonable inference against a waiver of constitutional rights. Here we have a situation where Mr. Smith, acting on his own, doing a very good job at this point representing himself, said, I do object to being tried in these jail clothes. So unlike most of the cases cited by the Respondent, you have a case here where someone is actually making an objection that's clear and unequivocal. The question is, does anything he does after that point constitute an intentional waiver or abandonment of a known right? And I don't think it does. And here's why. The first question the Court asks is, well, where can you get clothes? And Mr. Smith says, well, the only thing I can think of is the clothes I had on at the time of my arrest. They'd be better than anything else. And the judge said, well, I don't think they're going to get them for you. What about friends? And he says, I don't have friends or family I can help. And that's never been disputed. He's got nobody on the outside world who can help him. So then the judge, immediately after that, says, well, do you want a date and continuance to go and see if you can get the clothes from the jail yourself? But given what the judge said just five seconds before, Mr. Smith reasonably concluded, because the judge didn't think they'd give him his clothes, Smith reasonably concluded, there's nothing I can do to make them give him my clothes. And that's reality. That's what life is like for a prison inmate. The respondent's position, which suggests that all he had to do was waltz in there and they'd go to the concierge service and have them provide his clothes, is just ridiculous. I can tell the Court that I, as a lawyer, often have a very hard time dealing with jails and prisons, trying to get my clients the services that they have a right to. And so I can't imagine the difficulty faced by an incarcerated inmate who goes and tries to get something that he's not entitled to. Of course, this brings us back again to the fact that the trial judge, in complete dereliction of his duties, didn't do anything to help out. It would have been very easy for him. He could have ordered the prison to produce those jail clothes. And if they were available, the jail would have complied with the court order. And I think you can read the statement made by Mr. Smith during the hearing as a pro se, perhaps inartful request for such an order. You know, Your Honor, I want my jail clothes. And he said, no, it's your problem, and most likely you're not going to get them. So under those circumstances, I think the reason for him to say, continues meaningless. I think it's very similar to what happened in this court's case of Feltz v. Estelle, where the court called empty a promise made to provide an indigent pro per defendant with a runner to get him clothes, because that runner was meaningless. He didn't have any clothes to get, and he didn't have any money to go out and buy clothes. So I think for those reasons, there's just not a waiver here. And then I'd also like to talk about the legal aspect of it. The fact that Supreme Court authority clearly establishes not only that. You better wrap up, because your time has just run out. In that case, I'll reserve the remainder of my time. You're out. Okay. Mr. Winters. May it please the Court. Supervising Deputy Attorney General Lance Winters for the Worden Respondent. I will address both that there was a state court in this case, both reasonably found that Petitioner was not compelled to stand trial and jail clothes, and that the state court reasonably applied Chapman in finding that any error was harmless in this case. Do you think its finding of waiver was legally correct, but just not unreasonable? Well, first of all. Or legally error, but just not unreasonable. Is that what you're saying? Well, I think it was a reasonable application of Estelle v. Williams. First of all, Estelle v. Williams says that we're not, it says at page 509 in footnote 3, we are not talking about a waiver of a fundamental right. Rather, Estelle v. Williams talks in terms of an objection. Whereas a waiver, a court has an affirmative duty to inquire. But here, it is the Petitioner's burden to object. And in fact, Estelle v. Williams notes that in many cases, defendants choose to go to trial in jail clothes because they find it to be a tactical advantage. So we're not talking about a waiver, we're talking about an objection. And we have to have a meaningful objection. Certainly, Petitioner in this case objected, but you can't say that he objected to being compelled to stand trial in jail clothing when he refused to take any steps to remedy the situation. In this case. I guess I just have a hard time getting that. I mean, what could he do? Well, he could have gone to the jail and seen if he had gotten the clothes. He could have said, I object. It's clear, about as clear, probably more clearly than most lawyers would have. I object to this mess. But when offered the opportunity to remedy the objection, Petitioner declined. I submit that that is not a meaningful objection. That was a meaningless offer. I disagree, Your Honor. I don't think that the record shows that. There are a legion of cases out there which say that a judge has the obligation, the judge has the obligation to make sure that the defendant isn't put into that pickle. The pickle of being forced to go to trial in jail clothing. Yes. Well, I think, Your Honor, that the trial court in this case did take steps to remedy that. It offered, the Petitioner himself said that he had civilian clothes. All the judge had to do, it was very simple, just issue an order. Well, there's no showing that there was. Give him his, you know, jeans and T-shirt. I understand, Your Honor. There's no showing that an order was even necessary, though. The Petitioner in this case was pro per, and pro pers are granted very different privileges in jail than other inmates. There's no showing that access to his original jail clothing or his original clothing in which he was arrested is not one of those privileges. If he had come back the next day after taking. I'm not following. Who has the burden of making that showing that he didn't have access? I mean, he said on the record he didn't have access to the clothes. No, Your Honor, he did not. I believe you're mistaken. He said he didn't know whether the jail personnel would give him those clothes or not. But there was no showing that he made a request and it was denied. If he had come back and said, oh, I tried to get my clothes, but I need a court order, well, at that point maybe the court would have been in. If it was pro per, how would he know to ask for a court order? I mean, the judge knows what he has the power to do, but the per person doesn't. I'm suggesting that if he had gone back to the jail and been refused access to his clothes and been told by jail personnel that he needed a court order to get access to his civilian clothes and come back the next day and informed the court of this situation, that the court might have then taken the step, because at that point it would have been necessary to issue a court order. I just don't. I think you're imposing a very, by requiring the showing. I mean, he said, I don't know how that I can impose the jailers, that I can impose the jailers to let me have my clothes from my property. And so I said, I don't know what I can do about that. I don't think I can do anything to get the clothes. So I'm not going to ask you for a day when there's nothing I can do. Well, right there the court could have ordered the prison officials to get him his clothes. You're right, Your Honor. He could have ordered it right there. But there's no showing, again, that it was needed. Mr. Winters, wouldn't it be better in this situation to, from the government's perspective, to admit that the judge made an error, but in fact the question is whether it was a harmless error? Well, certainly, Your Honor, regardless of whether the State court made an error, it was correct in its application of the harmless error analysis. I do think that the, as this, as Your Honor has pointed out, it is the Supreme Court's precedent that we have to look to here. And actually I think the recent decision in Musladin further informs that. In Musladin, in the Supreme Court, the court was faced with a problem of spectator misconduct. And the parties had argued whether the appropriate standards from government misconduct had applied. And the Supreme Court said, we can't look to that. We have to look to our own jurisprudence as to spectator conduct. And we have nothing on the books. And therefore, the test applied by the State's courts cannot be unreasonable. And I think in this case, there is simply nothing on the books. There is no Supreme Court holding as to whether Chapman is applicable to this situation. And in that instance, the California courts cannot be unreasonable in finding that it is. What about Wiggins? Wiggins just seems to assume that the consequences of compelling, and it says, the consequences of compelling a defendant to wear prison clothing cannot be shown from the trial transcript and finds that it's reversible error, just like the forced administration of psychotropic drugs. Well, Your Honor, I think to the extent the Supreme Court precedent informs whether this application of Chapman was reasonable, I think the two cases as cited by this Court in granting the COA are Wiggins and Deck. And I think this case is much closer to Deck than Wiggins. In Deck, we talked, it mentions shackling, and which is very similar in its prejudicial effect to forcing a defendant to go to trial in jail clothes, because it's the appearance that is prejudicing or possibly prejudicing the jury. But shackling is actually much worse than mere jail clothes because it not only suggests that the defendant is in custody, but it suggests that he's a danger and he's likely to flee. And in that case, the Supreme Court found that harmless error analysis does apply. Wiggins is quite different. Wiggins is talking about involuntary medication administered to a defendant. But that's not only affecting the defendant's demeanor in court and thus his appearance, but his actual substantive ability to assist in his defense, unlike jail clothes or shackling. And so I think in that instance, the Supreme Court said, since we can't actually delve into the substantive ability of the defendant's ability to assist in his own defense, we just can't apply harmless error analysis in this case. But I think this case, the compelling a defendant to wear jail clothes at trial, is much closer to Deck. And I think that's bolstered by the fact that this court, as well as numerous other circuit courts, and other state courts have all applied Chapman. And I think the application of Chapman in this case was reasonable. The defendant was caught on two occasions driving a car that was stolen with a cracked steering column, and he was operating the car without a key. He admitted that he knew one of the cars was stolen, and he thought the other car was stolen. And yet, in light of this overwhelming evidence of his guilt, the defendant offered the weak defense that he had not taken the vehicle. But in fact, a violation of California Vehicle Code 10851 only requires taking or driving a vehicle. Thus, his defense was no defense at all. What is Mr. Smith's incarceration status? You know, Your Honor, I am not certain of what his current status is. You've got seven years. I'm sorry? You've got seven years, and he was convicted in 2001. I believe that is correct. So if, I mean, he may be close to being released or on parole at this time, I'm not certain. Unless the Court has any further questions, I will submit. Okay, thank you, counsel, both of you. The matter just argued will be submitted. And we'll next hear argument in the term line. Thank you.
judges: Rymer, Wardlaw, Smith